Good morning, Your Honors. Vinay Chai for Edvin Perez Fuentes. I think a remand in this case is warranted for a couple of reasons. Primarily so that my client has a full opportunity to testify as the law gives him the right to have. I have no doubt that the immigration judge in this case had every good intention in cutting my client's testimony short. I think she really did just want to focus his testimony on what she considered to be important. But given the history of this situation, I don't think her course of action was appropriate at all. My client, years after he had submitted his asylum application, had to submit an additional declaration basically because the initial asylum application didn't express his reasons for seeking asylum fully. And, in fact, in the subsequent declaration, he stated that my asylum application doesn't express my reasons for seeking asylum fully. And he also followed that up with in the declaration, I will explain more in my oral testimony. So I think that's why I just read the transcript differently. But it seems to me that what the immigration judge did basically was say, look, I understand what all you've said in your written application, and I'll accept that as true. If you want to have – if there's anything else you want to say, go to it. And what's the problem with that? Well, it wasn't an open-ended, if there's anything else you want to say, go to it, because she did foreclose him from saying anything more he might have wanted to say about what he actually had in his written declaration. And what was that? I mean, how are you prejudiced from that restriction? I mean, because it's not uncommon in administrative law proceedings for – to submit on declarations and then add anything that might be in addition or contain the declaration. I believe what was said here was he wants to corroborate what's in the declaration. So how are you prejudiced? Well, the thing is his lawyer said he wanted a – that it would be good to have his testimony in just for the sake of consistency. And then there was some – there was some back and forth between the lawyer and the immigration judge. And when the whole subject came up, the immigration judge said basically, if this – I'll give him the consistency. He doesn't have to – I don't want to hear all this stuff unless it's going to amplify what's – what's in the written stuff. And then after some back and forth with the – with the lawyer, she basically told the lawyer to go off the record and – go off the record and explain to his client, my client, that he didn't need to be talking about all that stuff because it's all set forth fully in the declaration. But – So what would have made a difference? What did your client want to say that would have changed the outcome of this proceeding? Well, Your Honor, we're kind of constrained in our factual assertions by the record. So, I mean, it kind of – we're kind of in a – in a tough spot. But, counsel, you – counsel, you have not asserted any potentially outcome-determinative facts or evidence that would have come in if this had gone on longer. And it's hard to understand what that might be. It's all very vague. You're just saying we were cut off, and we would have said additional things to support what did come in. So what is it that you think is outcome-determinative that was prevented? As I said, Your Honor, I don't – I think at this – I think at this stage of the I think there's certainly a potential that the outcome of the case was – was affected. For instance, the immigration judge in the end found that his fears were too speculative, that he didn't have a plan to – he didn't have a concrete plan for investigating the deaths of his relatives. And – and I think she – she didn't question the sincerity of his beliefs and the things he just has done, but – but thought it was very speculative how much – whether he would act on that or to what extent he would act on that. And I think if he had been able to testify additionally, he could – I think the depth of his relationship with some of the people he had mentioned in his – in his – in his written declaration could have been fleshed out. I think – I think another thing that wasn't really explored was the potential connection between the various incidents there. They were kind of just listed, 1, 2, 3, 4. The written declaration was actually pretty vague, I thought. And having been in immigration court plenty of times, I know that testimony – testimony can go all over the place. Like, I think people – I think memories sometimes get triggered just by the stress of in-court testimony. So it's difficult for me to say precisely what he would have said, but I think there is definitely an outcome-determinative potential in this case. Do you want to turn to the merits, aside from the due process violation? Well, basically, the I.J. felt that our – that my client's fear lacked an objective basis because it was too speculative. Why was she compelled – why was the immigration judge compelled to find otherwise? Well, because I think, A, it was based on her – her finding was based on something that isn't quite in the record, which is her finding that – that he didn't have a plan for – for investigating the deaths of his relatives. He was never quite specifically asked that. He was asked whether he had – he's asked what he'd done from here to investigate the deaths of any of his relatives. And he – and he testified that he had talked to his cousin, Wilson, who was in the military. He had contacted his cousin, Wilson, who was in the military in Guatemala, to see if he would inquire. And Wilson, out of fear of sort of internal military reprisal, declined to do so. And then after that, my client, in testimony, basically seemed to express some dejection as to the – as to the hopes of personally being able to do anything, certainly from – certainly from the United States. But he reiterated his – his desire to – to investigate the deaths of his relatives. Who had the burden of proof, do you think, in that hearing on the fear of persecution? Did your client have the burden of proof, do you think? I guess that would depend upon whether – whether he's found to have suffered past persecution. I would concede that he didn't – that he probably bore the burden of proof in this matter. But I do think that the basis – given that she found his testimony to be credible and that she credited his – his desire to see justice done and the sincerity of his political beliefs, I – I don't think it was reasonable for her to base her doubts about whether he would actually act on his beliefs on a finding that he didn't have a plan. And even if he didn't have a plan to investigate, he obviously had the wherewithal to contact a cousin in the military from here. And I don't – I don't think there's – I don't think it would have been – it was a huge leap from – from that to having the wherewithal to do something more concrete once you're actually sort of on-site in Guatemala. Can you base a well-founded fear of future persecution on something like a plan that's entirely up to you? If – if your testimony is credited, I think you can, especially in – in light of the facts in the record, which seem to document a pattern of abuses against people who inquire into human rights workers. And I only have about a minute and 20 seconds left here. So the last point I would just like to bring up is, in finding – also in finding that his fear was speculative, she stated that the record by no means establishes that every – every human rights worker or every person who inquires into human rights violations in Guatemala is subject to violent reprisals, which I think implied a higher standard anyhow than – than is allowable. Thank you. Okay. Thank you, Mr. Shirey. Mr. Grimes. May it please the Court. James Grimes for the Attorney General. Your Honors, this petition should be denied because the immigration judge did not cut off Petitioner Perez's testimony, because the record does not compel the conclusion that he is eligible for asylum. As to the first issue, with respect to his complaint about the conduct – the immigration judge's conduct of the hearing, he relies on two portions of the record, pages 79 to 81 and 83 to 85. And I think each portion must be viewed in context. As to the first, Perez testified at page 79 that it was, quote, the persecutions that caused him to leave Guatemala. His counsel asked him what did he mean by that. He was unable to answer exactly as counsel wished. Counsel asked again and counsel asked again. And then eventually he said, well, it was – I would have been intimidated by the guerrillas. And counsel said, well, what did you mean by – by that? He didn't exactly answer. So then counsel went back to persecution again. And it was only at that point, after four times, that the immigration judge interjected and merely pointed out that they were going around in circles, which is true. They were going around in circles. And then all the immigration judge did was suggest that they perhaps go at the questioning from a different angle. And he didn't order counsel to do anything. He merely had – he merely suggested. And counsel, apparently aware that he was not really getting anywhere, proceeded as the immigration judge suggested. So in context, the immigration judge was correct. And I think it's worthy of note that this issue didn't really come up until the appeal to the board where he was represented by different counsel who wasn't there at the complaint of exchange. And as to the second instance, at pages – at page 83, 84 and 85, he was talking about his friend, Demetreo Escobar, who was killed in 1995. Now, that death was also discussed in his declaration, I believe, at page 360 of the record. The immigration judge suggested at page 34 that the declaration dealt with this issue and that, quote, perhaps counsel might simply rely on the declaration. And then the immigration judge said, you know, I will – I will assume that he would testify consistently with his – with his declaration. And counsel responded, thank you, Your Honor, then I will – I will move forward. So counsel not only didn't object, but he agreed with what the immigration judge was saying. If – if hypothetically at that point counsel had said, no, I have some affirmative evidence beyond the declaration I want to present, it would be a different matter, wouldn't it? I believe so, Your Honor. Then there might be some evidence in the record. But his counsel is not the proverbial potted plant. If he actually thought there was something else he wanted to get to, then he could have – he could have moved in that direction. The immigration judge didn't direct him to do anything. He just suggested that you perhaps can move in this direction or that direction, and counsel agreed with him. And as I think, as Justice O'Connor alluded to, there – he hasn't – he hasn't alleged any sort of prejudice at all with respect to this issue. And he's waived the issue because he didn't raise it in his brief. And I think if you look to his declaration, the declaration lends strong support for where the immigration judge was going with this because the entirety of his declaration is based on speculation, his conjecture about what happened to his family and his friends. I'll give you two examples. His cousin Cesar was a corporal in the Guatemalan Army. And he said, quote, who knows if Cesar was really killed in combat. Well, maybe that's a good question, but he had the burden of proof, and he can't meet his burden of proof by relying on conjecture or speculation about things. His older brother Francisco, he said his older brother Francisco was in the National Defense Patrol. And about him he said, quote, it is quite possible that Francisco had encounters with guerrillas, but he doesn't even allege that anything happened to Francisco. And so it goes. That's – those are his claims that are based on speculation. So because there – because he has an alleged prejudice and because the immigration judge didn't cut off his questioning, he should not be able to prevail on that issue. Now, moving to the merits, there was no past persecution shown in this case. Nothing happened to him in the past that would support that claim. So the only issue is whether or not the record compels the conclusion that he has a well-founded fear of returning to Guatemala based on events that predate the peace accords and the motivation for which is based solely on his speculation and hearsay. Now, when he was asked about why he feared returning to Guatemala, he gave a sort of rambling response at pages 86 to 89. And eventually he said it was because he wanted to investigate his cousin's deaths and because – he also said that he would speak up because there was no justice for the poor. But as the immigration judge pointed out at page 51, everything he's talking about is based on his – is speculative. It's not a compelling claim in this court. He alleged his – he alleged a fear of reprisals for investigating his cousin's deaths, but that fear is based on his speculation that the government had anything to do with those deaths and the government wouldn't want him to look into it. He didn't present any evidence on either of those issues at the threshold. And as I pointed out, his declaration was based on hearsay. His friend, Nischix, he points to at page 361. He says he doesn't even know if his friend was even hurt, but he assumes that because he supported the guerrillas, something must have happened to him. But this is someone he just – he lost touch with. And the issue of the formulation of the plan, Judge Reimer, I know you've asked that question of whether or not a plan that you may or may not engage in could support your claim. Maybe in a – I don't know. The immigration judge didn't say if we had a stronger case that might happen. But in this case, he has the burden of proof. And he says that his desire to investigate will lead to his persecution. But if his desire is simply something that's whimsical, it's something he may or may not engage in, if it's an abstract desire, then he can't bear his burden of proof. And, of course, we still have the speculation that the government wouldn't – was even involved in the deaths in the first place. And his testimony on this wasn't even all that convincing. He said that he would like to investigate at page 89, but without his cousin's help, he couldn't really do anything. But if he's so desirous of investigating and he only thinks he can do it from Guatemala, one has to question his – the strength of his desire. Let me ask you a different question. Is it your view that a family can constitute a social group within the meaning of the INA? Well, I know that this Court had said that in, I believe, Thomas. I think you – I guess you would have to go back. Anymore. Exactly, Your Honor. I guess you would have to go back to Estrada Posadas, where this Court said that a family can't constitute a social group. No, I think we may have a rather clean slate on that issue in this circuit. So I'm asking for your view and your rationale. Well, my rationale would be that a family would be covered under sort of the imputed political opinion situation. Because let's take an example. Let's say that the government was persecuting the father of the family because he likes the color blue. Sure. That, of course, is not going to get him anywhere. I think it's pretty clear that one can – the imputed rules will apply. But I'm just asking you whether you think a family can constitute a social group within the meaning of the INA. Well, if you're – I don't – I mean, I guess you're just asking my opinion that no. I mean, you would have to fit that under the imputed rules. Because if the primary person hasn't stated a claim that would support asylum, then it would sort of be a twisting of the asylum law to allow the family to get asylum in a situation where the primary person wouldn't. But I don't think he's alleged a family claim here. His claim before the board was political opinion. His claim before the immigration judge is an amended declaration. Page 358, he said political opinion. So I think that's the claim that's before the court. And as to the country conditions, yes, the country conditions show that there are problems in Guatemala. But the country conditions do go both ways. There's evidence at page 116 that there's freedom to protest. There's evidence in his submissions at page 257 that the government has shown an increased willingness to go after people who are involved in human rights violations. I'm not going to say that it's perfect. It's certainly not. But there is evidence that would go both ways on that. And there is evidence at 251 of general lawlessness in the country, which could explain why some of his family and friends have been harmed. He certainly hasn't presented any evidence of why they were harmed. And I would like to point out, he claims in his brief that he had a fear of gorillas, but what he points to is at page 881 where he says, if I had joined the Army, I would have been a target of gorillas. So that's just his speculation about what would have happened. And he talks about his brother maybe having had contacts with the gorillas, but he doesn't allege that the gorillas even know anything about his brother, know that he's related to his brother or would want to harm him because of his brother. So he hasn't borne his burden of showing that the record compels reversal. And because of that and because he hasn't met his burden with respect to his first issue as well, we ask that you deny the petition. Thank you. Kagan. Thank you, Mr. Grimes. Mr. Chari. Thank you, Your Honor. I'm not completely in disagreement with Mr. Grimes that there's a lot of speculation and conjecture in his written declaration, but I think that's precisely the reason why it was so important that the immigration judge not foreclose his testimony on that written declaration and simply assume that his testimony would not amplify what was written in that declaration, especially in light of the fact that he actually said in that declaration that I will explain more in my oral testimony. And I think that the desire – I think there's more than just a desire and intent to see something done here. It does take – it does take some – something more than just an inchoate desire to contact a cousin in the military in Guatemala from the United States to see if he would assist in inquiries. I guess I'm just about done with my time here. Thank you, Mr. Chari, for your argument. Thank you, counsel. The matter just argued will be submitted. And we'll next hear argument in Parker versus Sedona Golf Resort.
judges: O'connor, Rymer, Thomas